UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN RE:  Patrick O'Brien and Michelle O'Brien,       )
                                                    )       Case No.: 10-45745
                        Debtors,                    )
                                                    )       Chapter 13
                                                    )
                                                    )       Adversary No.:
_____            )
                                                    )
Patrick O'Brien and Michelle O'Brien,               )       DEBTORS' COMPLAINT TO DETERMINE
                                                    )       THE EXTENT AND VALIDITY OF LIENS,
                        Plaintiffs,                  )       CLAIMS, AND ENCUMBRANCES
                                                    )       AGAINST PROPERTY OF THE DEBTORS'
        v.                                          )       BANKRUPTCY ESTATE
                                                    )
HSBC Mortgage Services, Inc.,                       )
                                                    )
                        Defendant.                  )
                                                    )

**SUMMARY OF EXHIBITS**

EXHIBIT A:     Appraisal

EXHIBIT B:     Deed of Trust to Interval Mortgage Corp., subsequently assigned to US Bank National
Association, as Trustee for Credit Suisse HEAT 2006-1

EXHIBIT C:     Deed of Trust to Interval Mortgage Corp., subsequently assigned to HSBC Mortgage
Services, Inc.

EXHIBIT D:     Proof of Claim of MSD.

EXHIBIT E:     Proof of Claim of US Bank National Association, as Trustee for Credit Suisse HEAT 2006-1

EXHIBIT F:     Proof of Claim of HSBC Mortgage Services, Inc.

EXHIBIT G:     Missouri Secretary of State Registered Agent Address evidencing that CT Corporation is
authorized by HSBC Mortgage Services, Inc. to receive service within the State of Missouri on its behalf.

s/s  Angela Redden-Jansen
Angela Redden-Jansen, #85064
Attorney for the Debtor
3350 Greenwood Blvd.
Maplewood, MO 63143
(314) 645-5900
(314) 645-5990 (fax)
amredden@swbell.net



# APPRAISAL OF REAL PROPERTY

**LOCATED AT:**
1248 Green Falls Dr
Green Mar Plat 2 Lot 145
Fenton, MO 63026-3417

**FOR:**
Patrick & Michelle Obrien
1248 Green Falls Dr
Fenton, MO 63026

**AS OF:**
06/30/2010

**BY:**
Matthew Dresner

**Midwest Rapid Appraisal, LLC**
**1146 Villa Flora Dr.**
**O'Fallon, MO 63366**
**(314) 368-9292**

Form GA2 — "WinTOTAL" appraisal software by a la mode, inc. —- 1-800-ALAMODE

Midwest Rapid Appraisal, LLC

# Uniform Residential Appraisal Report

File # 10-0630-04

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | |
|---|---|---|---|
| Property Address 1248 Green Falls Dr | City Fenton | State MO | Zip Code 63026-3417 |
| Borrower Patrick & Michelle Obrien | Owner of Public Record Patrick & Michelle Obrien | County St. Louis | |

Legal Description  Green Mar Plat 2 Lot 145

| | | |
|---|---|---|
| Assessor's Parcel # 28P-33-0472 | Tax Year 2009 | R.E. Taxes $ 1861.00 |
| Neighborhood Name Green Mar | Map Reference 41180 | Census Tract 2214.01 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant   Special Assessments $ 0.00   ☒ PUD   HOA $ 86.00 ☒ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Fair Market Value

Lender/Client  Patrick & Michelle Obrien   Address  1248 Green Falls Dr, Fenton, MO 63026

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).   The Owner, the Regional Multilist Service & Public Records.

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $   Date of Contract   Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit | 85 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | | | 2-4 Unit | 5 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 126 Low 32 | | Multi-Family | 3 % |
| Neighborhood Boundaries  The neighborhood is defined as homes in the Green Mar Subdivision in the | | | | | 189+ High 40+ | | Commercial | 2 % |
| Rockwood School District. | | | | | 164+ Pred. 36+ | | Other | 5 % |

Neighborhood Description  The subject is located in a quiet area with low noise and traffic levels. Other homes in the area are generally similar in style
and value. No adverse influences currently exist effecting marketability. Good access to most residential services including local shopping, schools,
places of worship, highways and major employment centers.

Market Conditions (including support for the above conclusions)  Due to the current market conditions discounts, buydowns or concessions are not
considered a factor.  Values in the subject's market area appear to be stable.  Supply and demand appear to be in balance.  Typical marketing
times appears to be 0-3 months.

| | | | |
|---|---|---|---|
| Dimensions 0.20 Acres (Survey not provided) | Area 8,712 SF | Shape Rectangular | View Other residential homes |
| Specific Zoning Classification R3 | Zoning Description SFR Residential | | |

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Concrete | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X   FEMA Map # 29189C0288H   FEMA Map Date 8/2/1995

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe
No visually apparent adverse easements, encroachments or known special assessments.  The site development is typical for the area.  Please
refer to title for easements on record.

| General Description | | Foundation | | Exterior Description materials/condition | | Interior materials/condition | |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☐ Crawl Space | | Foundation Walls Concrete/Avg | | Floors Lam/Wd/Avg | |
| # of Stories 1 | | ☒ Full Basement ☐ Partial Basement | | Exterior Walls BV/Vinyl/Avg | | Walls Drywall/Avg | |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | | Basement Area 1,137 sq.ft. | | Roof Surface Comp. Shingle/Poor | | Trim/Finish Wood/Avg | |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish 0 % | | Gutters & Downspouts Aluminum/Avg | | Bath Floor Laminate/Avg | |
| Design (Style) Ranch/Avg | | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type Thermal/Avg | | Bath Wainscot Fiberglass/Avg– | |
| Year Built 1970 | | Evidence of ☐ Infestation | | Storm Sash/Insulated No/Yes/Avg | | Car Storage ☐ None | |
| Effective Age (Yrs) 20 Years | | ☐ Dampness ☐ Settlement | | Screens Yes/Avg | | ☒ Driveway  # of Cars 2 | |
| Attic ☐ None | | Heating ☒ FWA ☐ HWBB ☐ Radiant | | Amenities ☐ Woodstove(s) # | | Driveway Surface Concrete | |
| ☐ Drop Stair ☐ Stairs | | ☐ Other Fuel Gas | | ☐ Fireplace(s) # ☒ Fence CL/Wd | | ☒ Garage  # of Cars 1 | |
| ☐ Floor ☐ Scuttle | | Cooling ☒ Central Air Conditioning | | ☒ Patio/Deck Deck ☐ Porch Front | | ☐ Carport  # of Cars | |
| ☐ Finished ☐ Heated | | ☐ Individual ☒ Other C-Fans | | ☐ Pool ☐ Other | | ☒ Att. ☐ Det. ☐ Built-In | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:   5 Rooms   3 Bedrooms   2.0 Bath(s)   1,137 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).  The subject has a porch, enclosed soffits and fascia, fence and crown molding.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  The subject's improvements are in average –
condition, i.e. below average for the neighborhood. See General Text Addendum for repairs that are recommended. The estimated physical
depreciation is based upon the age life method. 20 years divided by 60 years equals 33%. No functional or external obsolesence was noted.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

File # 10-0630-04

| | | | | | | |
|---|---|---|---|---|---|---|
| There are | 3 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 144,900 | | | to $ 154,900 | |
| There are | 6 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 126,000 | | | to $ 157,000 | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1248 Green Falls Dr | 216 May Valley Ln | | 1237 Green Knoll Dr | | 641 Green Hedge Dr | |
| | Fenton, MO 63026-3417 | Fenton, MO 63026 | | Fenton, MO 63026 | | Fenton, MO 63026 | |
| Proximity to Subject | | 0.15 miles E | | 0.31 miles S | | 0.29 miles SW | |
| Sale Price | $ | | $ 126,000 | | $ 140,000 | | $ 156,500 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 141.89 sq.ft. | | $ 129.63 sq.ft. | | $ 142.14 sq.ft. | |
| Data Source(s) | | MLS #90056997 DOM:18 | | MLS #90045572 DOM:42 | | MLS #10003713 DOM:51 | |
| Verification Source(s) | | MLS/County Records | | MLS/County Records | | MLS/County Records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | FHA | | Conventional | | FHA | |
| Concessions | | None Noted | | None Noted | | None Noted | |
| Date of Sale/Time | | 12/21/2009 SD | | 10/29/2009 SD | | 03/31/2010 SD | |
| Location | Average | Average | | Average | | Average | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 8,712 SF | 8,206 SF | 0 | 8,398 SF | 0 | 7,296 SF | 0 |
| View | Average | Average | | Average | | Average | |
| Design (Style) | Ranch/Avg | Ranch/Avg | | Split-Foyer/Avg | | Ranch/Avg | |
| Quality of Construction | BV/Vinyl/Avg- | BV/Cedar/Avg | -1,000 | BV/Vinyl/Avg | -1,000 | BV/Cedar/Avg | -1,000 |
| Actual Age | 40 Years | 40 Years | | 37 Years | 0 | 39 Years | 0 |
| Condition | Average - | Average- | | Average | -5,000 | Average + | -10,000 |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | +2,000 | Total / Bdrms. / Baths | +2,000 | Total / Bdrms. / Baths | |
| Room Count | 5 / 3 / 2.0 | 5 / 3 / 1.0 | | 6 / 3 / 1.0 | | 6 / 3 / 2.0 | |
| Gross Living Area | 1,137 sq.ft. | 888 sq.ft. | +4,980 | 1,080 sq.ft. | 0 | 1,101 sq.ft. | 0 |
| Basement & Finished | Full | Full | | Full | | Full | |
| Rooms Below Grade | Unfinished | Part Finished | -5,000 | Part Finished | -5,000 | Part Finished | -5,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | GFWA/Central | GFWA/Central | | GFWA/Central | | GFWA/Central | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | Garage-1-Att | Garage-1-Att | | Garage-2-Bltln | -2,000 | Carport-1-Att | +1,250 |
| Porch/Patio/Deck | Porch/Deck | Porch/Patio | 0 | Patio | +750 | Porch/Patio | 0 |
| Fireplace | None | None | | None | | None | |
| Fence | Fence | Fence | | Fence | | Fence | |
| Other:Kit Equip | Kit Equip | Kit Equip | | Kit Equip | | Kit Equip | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 980 | ☐ + ☒ - | $ -10,250 | ☐ + ☒ - | $ -14,750 |
| Adjusted Sale Price | | Net Adj. 0.8 % | | Net Adj. 7.3 % | | Net Adj. 9.4 % | |
| of Comparables | | Gross Adj. 10.3 % | $ 126,980 | Gross Adj. 11.3 % | $ 129,750 | Gross Adj. 11.0 % | $ 141,750 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   MLS & Public Records
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   MLS & Public Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | See | 02/24/2009 | No Sale | No Sale |
| Price of Prior Sale/Transfer | Addendum | 71,539 | 0 | 0 |
| Data Source(s) | County Records/MLS | County Records/MLS | County Records/MLS | County Records/MLS |
| Effective Date of Data Source(s) | 06/23/2010 | 06/23/2010 | 06/23/2010 | 06/23/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales   The subject has not been sold in the past 3 years. ( See Attatched
Addendum, MPSA) The comparables have been on the market in the past 3 years.

Summary of Sales Comparison Approach   See attached addendum.

The appraiser makes the following adjustments: Line 1 next to bathroom count is where the bathroom count adjustment would be. Line 2 would
then be the adjustment for any bedroom count differences, the last line is for any square footage adjustments (the appraiser does not make any
adjustments for square footage differences less than 100 square feet as the appraiser feels that this is similar marketable square footage).
Indicated Value by Sales Comparison Approach $ 132,500

Indicated Value by: Sales Comparison Approach $ 132,500   Cost Approach (if developed) $ N/D   Income Approach (if developed) $ N/D

All three approaches to value were considered, however, the Income Approach was not utilized due to the lack of supporting data. In concluding the
final value estimate, most consideration was given to the Sales Comparison Approach which best reflects the actions of typical buyers and sellers.
The Cost Approach was not developed.
This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: The appraiser assumes

marketable title and all equipment associated with the improvements are in working order.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 132,500 , as of 06/30/2010 , which is the date of inspection and the effective date of this appraisal.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report    File # 10-0630-04

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    The cost approach was not developed.

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | | =$ |
|---|---|---|---|---|---|
| Source of cost data | DWELLING | Sq.Ft. @ $ | | | =$ |
| Quality rating from cost service        Effective date of cost data | Basement | Sq.Ft. @ $ | | | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | See additional features from page 1. | | | | =$ |
| | Garage/Carport | Sq.Ft. @ $ | | | =$ |
| | Total Estimate of Cost-New | | | | =$ |
| | Less        Physical | Functional | External | | |
| | Depreciation | | | | =$(        ) |
| | Depreciated Cost of Improvements | | | | =$ |
| | *As-is* Value of Site Improvements | | | | =$ |
| Estimated Remaining Economic Life (HUD and VA only)        Years | INDICATED VALUE BY COST APPROACH | | | | =$ |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| Estimated Monthly Market Rent $        X Gross Rent Multiplier        = $ | Indicated Value by Income Approach |
|---|---|

Summary of Income Approach (including support for market rent and GRM)    due to insufficient rental data to generate a reliable GRM, and as the subject is owner-occupied, an Income Approach was not used.

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No    Unit type(s) ☒ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases        Total number of units        Total number of units sold |
|---|

| Total number of units rented        Total number of units for sale        Data source(s) |
|---|

Was the project created by the conversion of existing building(s) into a PUD?    ☐ Yes ☐ No  If Yes, date of conversion.

Does the project contain any multi-dwelling units?    ☐ Yes ☐ No  Data Source

Are the units, common elements, and recreation facilities complete?    ☐ Yes ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?    ☐ Yes ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

# Uniform Residential Appraisal Report

File # 10-0630-04

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

# Uniform Residential Appraisal Report

File # 10-0630-04

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report    File # 10-0630-04

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Matthew Dresner | Name |
| Company Name  Midwest Rapid Appraisal | Company Name |
| Company Address  1146 Villa Flora Dr., O'Fallon, MO 63366 | Company Address |
| Telephone Number  (314) 368-9292 | Telephone Number |
| Email Address  midwestrapidappraisal@gmail.com | Email Address |
| Date of Signature and Report  July 01, 2010 | Date of Signature |
| Effective Date of Appraisal  06/30/2010 | State Certification # |
| State Certification #  2005037183 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # | Expiration Date of Certification or License |
| State  MO | |
| Expiration Date of Certification or License  06/30/2012 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect subject property |
| 1248 Green Falls Dr | ☐ Did inspect exterior of subject property from street |
| Fenton, MO 63026-3417 | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $   132,500 | ☐ Did inspect interior and exterior of subject property |
| LENDER/CLIENT | Date of Inspection |
| Name | |
| Company Name  Patrick & Michelle Obrien | COMPARABLE SALES |
| Company Address  1248 Green Falls Dr, Fenton, MO 63026 | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

(stamp: MATTHEW DRESNER NUMBER 2005037183 RESIDENTIAL — REAL ESTATE APPRAISER — STATE OF MISSOURI)

# General Text Addendum

File No. 10-0630-04

| | |
|---|---|
| Borrower/Client | Patrick & Michelle Obrien |
| Property Address | 1248 Green Falls Dr |
| City | Fenton | County | St. Louis | State | MO | Zip Code | 63026-3417 |
| Lender | Patrick & Michelle Obrien |

## • PURPOSE AND INTENDED USE OF THE APPRAISAL

The Intended User of this appraisal report is the client. The Intended Use is to evaluate the property that is the subject of this appraisal for fair market value, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value. No additional Intended Users are identified by the appraiser.

## • SCOPE OF THE APPRAISAL

In this appraisal assignment, an inspection was made of the interior and exterior of the subject property. When available, additional information about the subject was obtained from county records, the owner and the Multiple Listing Service. In order to estimate market value, three methods were considered: the Sales Comparison Approach, the Cost Approach and the Income Approach. In the Sales Comparison Approach, at least three sales similar to the subject property were identified. These comparable sales were then adjusted for their differences from the subject. After adjusting the sales prices, the comparables were analyzed and weighted to determine an indicated value for the subject by the Sales Comparison Approach. The first step of the Cost Approach was to determine the value of the site by an appropriate method. Next, the reproduction cost was calculated as if the improvements were new. The various forms of depreciation were then subtracted from the cost new of the improvements. Finally, by combining the value of the site with the depreciated value of the improvements, a value by the Cost Approach was indicated. The first requirement of the Income Approach was to estimate the market rent of the subject by researching current rates in the area. Next, the sales prices of rental properties were divided by their monthly income to develop a Gross Rent Multiplier. The value of the subject by the Income Approach was estimated by multiplying the Estimated Market Rent by the Gross Rent Multiplier. It should be noted that single family homes are not typically purchased for their income potential; therefore, the Income Approach may not be applicable due to a lack of market data. Through a final reconciliation process, the value indications by the various approaches were concluded into a single estimate of market value.

## • ADDENDUM TO CONSIDERATION OF PERSONAL PROPERTY

For the purpose of this report, the appraisal process excluded any personal property or non-realty items from the estimate of value.

## • ADDENDUM TO HIGHEST AND BEST USE

In order to determine if the land was being put to its highest and best use, the site was first analyzed as if vacant and available to be improved. During the course of this analysis, several factors were considered: the legally permitted uses; the physical characteristics of the site; the financial feasibility or cost-benefit of a particular type of improvement; the suitability of a potential improvement based on current market conditions; and any foreseeable trends or changes that would significantly impact the land and/or the improvements. Since any given property rarely represents the perfect improvement, a determination was made as to whether the present improvements were reasonably close to the highest and best use of the land. Unless otherwise indicated, the subject property as improved was found to represent the highest and best use.

## • ADDENDUM TO ELECTRONIC SIGNATURES AND DIGITAL PHOTOGRAPH

This appraisal has been signed with electronic signatures that are password protected. This appraisal report is valid with electronic signatures only. In addition, the photos supplied in this report are digital and original and have not been enhanced.

## • ADDENDUM TO SUBJECT'S SQUARE FOOTAGE

The appraiser measured the subject utilizing a laser guided measuring device that is accurate to 0.10" and measured to ANSI building standards. The subject is measured twice to ensure an accurate measurement.

## • ADDENDUM TO CONDITION

Upon inspection of the subject property the appraiser noticed the following items in need of repair:

The roof had 4 layers of shingles causing the roof decking to sag and the roof to peel up in several places.

The wood trim was missing in several places.

The flooring was unfinished in several places.

There was damage to the drywall ceiling in several places.

One of the kitchen cabinets was damaged.

The master shower stall is in need of replacing.

There was unfinished electrical work.

The driveway had several cracks and chips and is recommended to be replaced.

# General Text Addendum

File No. 10-0630-04

| | |
|---|---|
| Borrower/Client | Patrick & Michelle Obrien |
| Property Address | 1248 Green Falls Dr |
| City | Fenton | County | St. Louis | State | MO | Zip Code | 63026-3417 |
| Lender | Patrick & Michelle Obrien |

The vinyl siding was discolored in the rear of the house.

The front and rear posts are recommended to be repainted.

The appraiser reccommends both a home inspector and a local contractor view the subject property.

- **ADDENDUM TO SALES COMPARISON APPROACH**

All comparables are closed sales.

All comparables are similar style homes in the subject's market area.

Comparables 1 & 2 closed more than six months ago. They are still considered to be good comparables as the market has not changed appreciably since they closed.

The subject and comparable sites vary in size, but are considered to be equal in value.

The subject property and the comparables all differ in age but have the same effective age, therefore, no adjustment was needed.

Estimated indicated value is determined by using the Gross Adjustment of sale price for each comparable as a measure of the relative quality of the comp. A lower adjustment indicates a better comp, and vice versa. The ratio of gross dollar adjustment to sale price for each of the comps is used to calculate the weight each comp should have in a weighted average calculation. This weighted average is used as the indicated value of the subject.

# MULTI-PURPOSE SUPPLEMENTAL ADDENDUM
# FOR FEDERALLY RELATED TRANSACTIONS

Midwest Rapid Appraisal, LLC

| Borrower/Client | Patrick & Michelle Obrien | | | |
|---|---|---|---|---|
| Property Address | 1248 Green Falls Dr | | | |
| City | Fenton | County St. Louis | State MO | Zip Code 63026-3417 |
| Lender | Patrick & Michelle Obrien | | | |

This Multi-Purpose Supplemental Addendum for Federally Related Transactions was designed to provide the appraiser with a convenient way to comply with the current appraisal standards and requirements of the Federal Deposit Insurance Corporation (FDIC), the Office of the Comptroller of Currency (OCC), The Office of Thrift Supervision (OTS), the Resolution Trust Corporation (RTC), and the Federal Reserve.

> **This Multi-Purpose Supplemental Addendum is for use with any appraisal. Only those statements which have been checked by the appraiser apply to the property being appraised.**

## ☒ PURPOSE & FUNCTION OF APPRAISAL

The purpose of the appraisal is to estimate the market value of the subject property as defined herein. The function of the appraisal is to assist the above-named Lender in evaluating the subject property for lending purposes. This is a federally related transaction.

## ☒ EXTENT OF APPRAISAL PROCESS

☒ The appraisal is based on the information gathered by the appraiser from public records, other identified sources, inspection of the subject property and neighborhood, and selection of comparable sales within the subject market area. The original source of the comparables is shown in the Data Source section of the market grid along with the source of confirmation, if available. The original source is presented first. The sources and data are considered reliable. When conflicting information was provided, the source deemed most reliable has been used. Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion.

☒ The Reproduction Cost is based on  Marshall & Swift
supplemented by the appraiser's knowledge of the local market.

☒ Physical depreciation is based on the estimated effective age of the subject property. Functional and/or external depreciation, if present, is specifically addressed in the appraisal report or other addenda. In estimating the site value, the appraiser has relied on personal knowledge of the local market. This knowledge is based on prior and/or current analysis of site sales and/or abstraction of site values from sales of improved properties.

☒ The subject property is located in an area of primarily owner-occupied single family residences and the income Approach is not considered to be meaningful. For this reason, the Income Approach was not used.

☐ The Estimated Market Rent and Gross Rent Multiplier utilized in the Income Approach are based on the appraiser's knowledge of the subject market area. The rental knowledge is based on prior and/or current rental rate surveys of residential properties. The Gross Rent Multiplier is based on prior and/or current analysis of prices and market rates for residential properties.

☐ For income producing properties, actual rents, vacancies and expenses have been reported and analyzed. They have been used to project future rents, vacancies and expenses.

## ☒ SUBJECT PROPERTY OFFERING INFORMATION

According to  MLS & Public Records  the subject property:
- ☒ has not been offered for sale in the past: ☐ 30 days ☐ 1 year ☒ 3 years.
- ☐ is currently offered for sale for $
- ☐ was offered for sale within the past: ☐ 30 days ☐ 1 year ☐ 3 years  for $
- ☐ Offering information was considered in the final reconciliation of value.
- ☐ Offering information was not considered in the final reconciliation of value.
- ☐ Offering information was not available. The reasons for unavailability and the steps taken by the appraiser are explained later in this addendum.

## ☒ SALES HISTORY OF SUBJECT PROPERTY

According to  MLS & Public Records  the subject property:
- ☒ Has not transferred ☐ in the past twelve months. ☒ in the past thirty-six months. ☐ in the past 5 years.
- ☐ Has transferred ☐ in the past twelve months. ☐ in the past thirty-six months. ☐ in the past 5 years.
- ☐ All prior sales which have occurred in the past  are listed below and reconciled to the appraised value, either in the body of the report or in the addenda.

| Date | Sales Price | Document # | Seller | Buyer |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## ☒ FEMA FLOOD HAZARD DATA

☒ Subject property is not located in a FEMA Special Flood Hazard Area.
☐ Subject property is located in a FEMA Special Flood Hazard Area.

| Zone | FEMA Map/Panel # | Map Date | Name of Community |
|---|---|---|---|
| X | 29189C0288H | 8/2/1995 | |

- ☐ The community does not participate in the National Flood Insurance Program.
- ☐ The community does participate in the National Flood Insurance Program.
- ☐ It is covered by a regular program.
- ☐ It is covered by an emergency program.

Form MPA3 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

☒ **CURRENT SALES CONTRACT**

☒ The subject property is currently not under contract.
☐ The contract and/or escrow instructions were not available for review. The unavailability of the contract is explained later in the addenda section.

☐ The contract and/or escrow instructions were reviewed. The following summarizes the contract:

| Contract Date | Amendment Date | Contract Price | Seller |
|---|---|---|---|
| | | | |

☐ The contract indicated that personal property was not included in the sale.
☐ The contract indicated that personal property was included. It consisted of _____
                                                                            Estimated contributory value is $ _____ .
☐ Personal property was not included in the final value estimate.
☐ Personal property was included in the final value estimate.
☐ The contract indicated no financing concessions or other incentives. _____
☐ The contract indicated the following concessions or incentives: _____
                                                                   _____

☐ If concessions or incentives exist, the comparables were checked for similar concessions and appropriate adjustments were made, if applicable, so
   that the final value conclusion is in compliance with the Market Value defined herein.

☒ **MARKET OVERVIEW**     Include an explanation of current market conditions and trends.

 3 to 6      months is considered a reasonable marketing period for the subject property based on    MLS data and the appraisers knowledge of
the subject's market area.

☒ **ADDITIONAL CERTIFICATION**

The Appraiser certifies and agrees that:

(1) The analyses, opinions and conclusions were developed, and this report was prepared, in conformity with the Uniform Standards of Professional
    Appraisal Practice ("USPAP"), except that the Departure Provision of the USPAP does not apply.
(2) Their compensation is not contingent upon the reporting of predetermined value or direction in value that favors the cause of the client, the amount
    of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.
(3) This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.

☒ **ADDITIONAL (ENVIRONMENTAL) LIMITING CONDITIONS**

The value estimated is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental
environmental conditions unless otherwise stated in this report. The appraiser is not an expert in the identification of hazardous substances or detrimental
environmental conditions. The appraiser's routine inspection of and inquiries about the subject property did not develop any information that indicated
any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively unless otherwise stated
in this report. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of
hazardous substances or detrimental environmental conditions on or around the property that would negatively affect its value.

☐ **ADDITIONAL COMMENTS**

☐ **APPRAISER'S SIGNATURE & LICENSE/CERTIFICATION**

Appraiser's Signature _____    Effective Date 06/30/2010      Date Prepared  July 01, 2010
Appraiser's Name (print)  Matthew Dresner                        Phone #  (314) 368-9292
State  MO       ☐ License    ☒ Certification #  2005037183       Tax ID #   59-3824525

☐ **CO-SIGNING APPRAISER'S CERTIFICATION**

☐ The co-signing appraiser has personally inspected the subject property, both inside and out, and has made an exterior inspection of all comparable sales
   listed in the report. The report was prepared by the appraiser under direct supervision of the co-signing appraiser. The co-signing appraiser accepts
   responsibility for the contents of the report including the value conclusions and the limiting conditions, and confirms that the certifications apply
   fully to the co-signing appraiser.
☐ The co-signing appraiser has not personally inspected the interior of the subject property and:
   ☐ has not inspected the exterior of the subject property and all comparable sales listed in the report.
   ☐ has inspected the exterior of the subject property and all comparable sales listed in the report.
☐ The report was prepared by the appraiser under direct supervision of the co-signing appraiser. The co-signing appraiser accepts responsibility for the
   contents of the report, including the value conclusions and the limiting conditions, and confirms that the certifications apply fully to the co-signing
   appraiser with the exception of the certification regarding physical inspections. The above describes the level of inspection performed by the
   co-signing appraiser.
☐ The co-signing appraiser's level of inspection, involvement in the appraisal process and certification are covered elsewhere in the addenda section
   of this appraisal.

☐ **CO-SIGNING APPRAISER'S SIGNATURE & LICENSE/CERTIFICATION**

Co-Signing
Appraiser's Signature _____    Effective Date _____    Date Prepared _____
Co-Signing Appraiser's Name (print) _____           Phone # _____
State _____    ☐ License    ☐ Certification # _____    Tax ID # _____

## Subject Photo Page

| Borrower/Client | Patrick & Michelle Obrien | | | | |
|---|---|---|---|---|---|
| Property Address | 1248 Green Falls Dr | | | | |
| City | Fenton | County St. Louis | | State MO | Zip Code 63026-3417 |
| Lender | Patrick & Michelle Obrien | | | | |



### Subject Front

1248 Green Falls Dr
Sales Price
Gross Living Area          1,137
Total Rooms                5
Total Bedrooms             3
Total Bathrooms            2.0
Location                   Average
View                       Average
Site                       8,712 SF
Quality                    BV/Vinyl/Avg-
Age                        40 Years



### Subject Rear



### Subject Street

## Photograph Addendum

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower/Client | Patrick & Michelle Obrien | | | | | |
| Property Address | 1248 Green Falls Dr | | | | | |
| City | Fenton | County | St. Louis | State | MO | Zip Code 63026-3417 |
| Lender | Patrick & Michelle Obrien | | | | | |



**Left Side**



**Right Side**



**Kitchen**



**Family**



**Full Bath**



**Bedroom**



**Full Bath**



**Bedroom**



**Bedroom**

## Photograph Addendum

| | |
|---|---|
| Borrower/Client | Patrick & Michelle Obrien |
| Property Address | 1248 Green Falls Dr |
| City | Fenton | County St. Louis | State MO | Zip Code 63026-3417 |
| Lender | Patrick & Michelle Obrien |


**Roof in need of replacing**


**Front porch post needs repainting**


**Driveway cracks**


**Driveway chipping**


**Roof in need of replacing**


**Damaged vinyl siding**


**Rear porch post needs repainting**


**Roof in need of replacing**


**Roof in need of replacing**


**Damaged drywall**


**Damaged drywall**


**No floor molding**


**Unfinished electrical**


**Bath wainscot in need of repair**


**Unfinished flooring**

## Photograph Addendum

| | | | |
|---|---|---|---|
| Borrower/Client | Patrick & Michelle Obrien | | |
| Property Address | 1248 Green Falls Dr | | |
| City | Fenton | County St. Louis | State MO Zip Code 63026-3417 |
| Lender | Patrick & Michelle Obrien | | |



**Master shower in need of replacing**



**Unfinished flooring**



**Closet door not hung**



**Damaged drywall**



**No wood trim**



**No wood trim**



**Damaged drywall**



**Kitchen cabinet damaged**

# Comparable Photo Page

| Borrower/Client | Patrick & Michelle Obrien | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1248 Green Falls Dr | | | | | | |
| City | Fenton | County | St. Louis | State | MO | Zip Code | 63026-3417 |
| Lender | Patrick & Michelle Obrien | | | | | | |



### Comparable 1

| | |
|---|---|
| 216 May Valley Ln | |
| Prox. to Subject | 0.15 miles E |
| Sale Price | 126,000 |
| Gross Living Area | 888 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.0 |
| Location | Average |
| View | Average |
| Site | 8,206 SF |
| Quality | BV/Cedar/Avg |
| Age | 40 Years |



### Comparable 2

| | |
|---|---|
| 1237 Green Knoll Dr | |
| Prox. to Subject | 0.31 miles S |
| Sale Price | 140,000 |
| Gross Living Area | 1,080 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 1.0 |
| Location | Average |
| View | Average |
| Site | 8,398 SF |
| Quality | BV/Vinyl/Avg |
| Age | 37 Years |



### Comparable 3

| | |
|---|---|
| 641 Green Hedge Dr | |
| Prox. to Subject | 0.29 miles SW |
| Sale Price | 156,500 |
| Gross Living Area | 1,101 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | Average |
| View | Average |
| Site | 7,296 SF |
| Quality | BV/Cedar/Avg |
| Age | 39 Years |

# State of Missouri

**Department of Insurance, Financial Institutions and Professional Registration**
**Division of Professional Registration**
*Real Estate Appraisers Commission*
## State Certified Residential Real Estate Appraiser

VALID THROUGH JUNE 30, 2012
ORIGINAL CERTIFICATE/LICENSE NO. 2006037183

MATTHEW D DRESNER
824 LIBERTY CREEK DRIVE
WENTZVILLE MO 63385
USA

*Varena Beauchamp*

EXECUTIVE DIRECTOR

DIVISION DIRECTOR

Generated by TallPDF.NET Evaluation

CSFB.405176148

BP16673/1126

*20507270

## JANICE M. HAMMONDS, RECORDER OF DEEDS
## ST. LOUIS COUNTY MISSOURI
## 41 SOUTH CENTRAL, CLAYTON, MO 63105

| TYPE OF INSTRUMENT | GRANTOR | TO | GRANTEE |
|---|---|---|---|
| **DT** | **O BRIEN MICHELLE ETCON** | | **INTERVALE MORTGAGE CORP** |

PROPERTY DESCRIPTION:  **GREEN MAR PLAT 2 LOT 145     PB 130 PG 32**     Kim Miller C vells

| Lien Number | Notation | Locator |
|---|---|---|
| | | |

**NOTE:** I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certication Sheet as to the **TYPE OF INSTRUMENT, the NAMES of the GRANTOR and GRANTEE** as well as the **DESCRIPTION of the REAL PROPERTY affected** is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, **the ATTACHED DOCUMENT governs.** Only the DOCUMENT NUMBER, the DATE and TIME of filing for record, and the **BOOK and PAGE** of the recorded Document is taken from this CERTIFICATION SHEET.

### RECORDER OF DEEDS DOCUMENT CERTIFICATION

STATE OF MISSOURI )
                                  SS.
COUNTY OF ST. LOUIS )

| Document Number |
|---|
| **170** |

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of _____ **22** _____ pages, (this page inclusive), was filed for record in my office on the _____ **27** day of _____ **July** _____ **2005** at _____ **08:00 AM** and is truly recorded in the book and at the page shown at the top and/or bottom of this page.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

_Jo Ann Reber_
Deputy Recorder

_____ N.P
_____ N.P.C
_____ N.N.C.
_____ N.N.I.

_Janice M. Hammonds_
Recorder of Deeds
St. Louis County, Missouri

RECORDING FEE ____ **$84.00** ____
**(Paid at the time of Recording)**

Mail to:

,

Destination code:          **M**

B-16673 P-1126/1147

Click here to unlock TallPDF.NET



BP16673/1127

DEED LABEL : hfs5wx

O BRIEN, MICHELLE     $138,400.00

Investor Name
Credit Suisse First Bos

*CSFB 405176148*

Status               Sold
Title Ret. Recei     /19/2006



*2 2 1 0 0 5 0 7     0 0 4 *

## DEED OF TRUST

DOCUMENT DATE: JULY 15, 2005

GRANTOR(S): **MICHELLE O BRIEN AND PATRICK O BRIEN, WIFE AND HUSBAND**

GRANTEE(S): **Intervale Mortgage Corporation**

GRANTEE'S ADDRESS: **815 RESERVOIR AVENUE, CRANSTON, RHODE ISLAND 02910**

TRUSTEE: JAMES H. McLARNEY

LEGAL DESCRIPTION: SEE ATTACHED SCHEDULE "A", page 15

Touchstone Title & Abstract
14334 S. Outer 40
Town & Country, MO 63017
314-205-2400

OS1372

BP16673/1128

———————————— [Space Above This Line For Recording Data] ————————————

Loan Number 2210050722030
MIN: 100077910004340101

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **JULY 15, 2005,** together with all Riders to this document.

(B) "Borrower" is **MICHELLE O BRIEN AND PATRICK O BRIEN, WIFE AND HUSBAND.** Borrower is the trustor under this Security Instrument.

(C) "Lender" is **Intervale Mortgage Corporation.** Lender is a **CORPORATION** organized and existing under the laws of **RHODE ISLAND.** Lender's address is **815 RESERVOIR AVENUE, CRANSTON, RHODE ISLAND 02910.**

(D) "Trustee" is **JAMES H. McLARNEY.**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **JULY 15, 2005.** The Note states that Borrower owes Lender **ONE HUNDRED THIRTY-EIGHT THOUSAND FOUR HUNDRED AND 00/100ths** Dollars (U.S.**$138,400.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **AUGUST 1, 2035.**

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

MISSOURI-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**   Form 3026  1/01 *(page 1 of 14 pages)*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     X _Michelle O'Brien_____ (Seal)
                                          MICHELLE O BRIEN                        -Borrower

_____     X _Patrick O'Brien_____ (Seal)
                                          PATRICK O BRIEN                         -Borrower

                    _____ (Seal)     _____ (Seal)
                          -Borrower                                            -Borrower

State of MISSOURI, County of _St. Louis_____ , ss.

On this **15TH** day of **JULY, 2005**, before me personally appeared **MICHELLE O BRIEN AND PATRICK O BRIEN, WIFE AND HUSBAND**, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that he/she/they executed the same as his/her/their free act and deed.

(Seal)

                                          _____
                                          Notary Public _Brian Thies_

My commission expires:
_6/28/08_

After Recording Return To:

Decision One Mortgage Company, LLC
Servicing Agent for Intervale Mortgage Corporation
6060 J.A. Jones Drive, Suite 800
Charlotte, North Carolina 28287

```
" NOTARY SEAL "
Brian Thies, Notary Public
St. Louis County, State of Missouri
My Commission Expires 6/28/2008
```

**MISSOURI**-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT          Form 3026  1/01 (page 14 of 14 pages)

Generated by TallPDF.NET Evaluation

Schedule 'A'

Lot 145 of GREEN MAR PLAT 2, a subdivision recorded in plat book 130, page 32 in the St. Louis County Recorder's Office.

Page 15

(051372A.PFD/051372A/8)

Click here to unlock TallPDF.NET

 

# JANICE M. HAMMONDS, RECORDER OF DEEDS
## ST. LOUIS COUNTY MISSOURI
### 41 SOUTH CENTRAL, CLAYTON, MO 63105

TYPE OF
INSTRUMENT       GRANTOR       TO       GRANTEE
**DTX**      **O BRIEN MICHELLE O ETUX**       **INTERVALE MORTGAGE CORP ETAL**

PROPERTY       **GREEN MAR PLAT 2 LOT 145**     **PB 130 PG 32**
DESCRIPTION:

| Lien Number | Notation | Locator |
|---|---|---|
| | | |

**NOTE:** I, the undersigned Recorder of Deeds, do hereby certify that the information shown on this Certication Sheet as to the **TYPE OF INSTRUMENT, the NAMES of the GRANTOR and GRANTEE** as well as the **DESCRIPTION of the REAL PROPERTY** affected is furnished merely as a convenience only, and in the case of any discrepancy of such information between this Certification Sheet and the attached Document, the **ATTACHED DOCUMENT** governs. Only the DOCUMENT NUMBER, the DATE and TIME of filing for record, and the BOOK and PAGE of the recorded Document is taken from this CERTIFICATION SHEET.

## RECORDER OF DEEDS DOCUMENT CERTIFICATION

STATE OF MISSOURI  )
               SS.
COUNTY OF ST. LOUIS )

| Document Number |
|---|
| **171** |

I, the undersigned Recorder of Deeds for said County and State, do hereby certify that the following and annexed instrument of writing, which consists of ___*10*___ pages, (this page inclusive), was filed for record in my office on the ___**27**___ day of ___**July**___ ___**2005**___ at ___**08:00 AM**___ and is truly recorded in the book and at the page shown at the top and/or bottom of this page.

In witness whereof I have hereunto set my hand and official seal the day, month and year aforesaid.

_____
Deputy Recorder

____ N.P
____ N.P.C
____ N.N.C.
____ N.N.I.

_____
Recorder of Deeds
St. Louis County, Missouri

RECORDING FEE ___**$70.00**___
**(Paid at the time of Recording)**

**Mail to:**

,

Destination code:     **M**



DEED LABEL : hfs5wx

O BRIEN, MICHELLE
          $34,600.00
Investor Name
**Household Mortgage Serv**

Status                    **Sold**
Title Ret. Received 04/10/2006

---

# DEED OF TRUST  Loan Number
MIN: 100077910004347395

THIS DEED OF TRUST is made this 15TH day of JULY, 2005, among the Grantor, **MICHELLE O BRIEN AND PATRICK O BRIEN HUSBAND AND WIFE** (herein "Borrower"), **JAMES H. McLARNEY** (herein "Trustee"), and the Beneficiary, **Mortgage Electronic Registration Systems, Inc.** (herein "MERS"). MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. The Lender is **Intervale Mortgage Corporation**, a corporation organized and existing under the laws of RHODE ISLAND, whose address is 815 RESERVOIR AVENUE, CRANSTON, **RHODE ISLAND** 02910 (herein "Lender").

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. Borrower, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of ST. LOUIS, State of Missouri:

SEE ATTACHED SCHEDULE "A", page 7        ✶ granter  △ grantee

which has the address of  **1248 GREEN FALLS DRIVE, FENTON,**

[Street, City] ,

Missouri    **63026**    [Zip Code]  ("Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property"; Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated JULY 15, 2005 and extensions and renewals thereof (herein "Note"), in the principal sum of U.S.$34,600.00, with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on AUGUST 1, 2025; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

---

MISSOURI-SECOND MORTGAGE-1/80-FNMA/FHLMC MODIFIED INSTRUMENT  |  Form 3826  *(page 1 of 6 pages)*

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but

does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including Borrower's failure to pay, by the end of ten (10) calendar days after the date they are due, any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all costs and expenses incurred in pursuing the remedies provided in this paragraph 17 to the extent permitted by applicable law.

If Lender invokes the power of sale, Lender or Trustee shall mail copies of a notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property to any later time on the same date by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's fees and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; to the extent permitted by applicable law; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to, acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Release.** Upon payment of all sums secured by this Deed of Trust, Lender shall release this Deed of Trust without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. **Substitute Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Deed of Trust is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

22. **Borrower's Address.** Borrower's address as of the date of this Deed of Trust is 6303 LAKEWOOD TERRACE 200, IMPERIAL, MISSOURI 63052

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Adjustable Rate Rider      ☐ Condominium Rider      ☐ 1-4 Family Rider

☐ Graduated Payment Rider      ☒ Planned Unit Development Rider      ☐ Biweekly Payment Rider

☐ Balloon Rider      ☐ Rate Improvement Rider      ☐ Second Home Rider

☐ Other(s) [specify]

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____      _____ (Seal)
                                                          **MICHELLE O BRIEN**        -Borrower

_____      _____ (Seal)
                                                          **PATRICK O BRIEN**        -Borrower

                                                           _____ (Seal)
                                                             -Borrower

                                                             _____ (Seal)
                                                             -Borrower

```
" NOTARY SEAL "
Brian Thies, Notary Public
St. Louis County, State of Missouri
My Commission Expires 6/28/2008
```

STATE OF MISSOURI,

         **COUNTY** _____ of _St. Louis_ ss:

On this   **15TH**   day of **JULY**      , **2005** , before me personally appeared **MICHELLE O BRIEN AND PATRICK O BRIEN HUSBAND AND WIFE** to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

My term expires: _6/28/08_      Notary Public _BRIAN THIES_

_____ [Space Below This Line Reserved For Lender and Recorder] _____

When Recorded Mail To:

Decision One Mortgage Company, LLC
Servicing Agent for Intervale Mortgage Corporation        **Form 3826** *(page 6 of 6 pages)*
6060 J.A. Jones Drive, Suite 800
Charlotte, North Carolina 28287

Schedule 'A'

Lot 145 of GREEN MAR PLAT 2, a subdivision recorded in plat book 130, page 32 in the St. Louis County Recorder's Office.

Page 7

B10 (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT | EASTERN | DISTRICT OF | MISSOURI | PROOF OF CLAIM |

**Name of Debtor**
Patrick E. & Michelle O'Brien

**Case Number:**
10-45475

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor** (The person or other entity to whom the debtor owes money or property):

Metropolitan St. Louis Sewer District

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

**Name and address where notices should be sent:**
MSD
2350 Market St. , St. Louis, MO 63103-2555

Telephone number: (314) 768-6200

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

**SELECT CHAPTER**

7 ☐   11 ☐   12 ☐   13 ☒

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:
538331-0

Check here ☐ replaces
if this claim ☐ amends a previously filed claim, dated: _____

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other   Sewer Service

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Your SS #:
  Unpaid compensation for services performed
  from _____ to 8/16/2010
  (date)          (date)

**2. Date debt was incurred:** 6/1/2007

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ $1,257.35

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
- ☐ Real Estate   ☐ Motor Vehicle
- ☒ Other   Sewer Lien

Value of Collateral: $ 1,257.35

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ 1,257.35

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority   $ _____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(4).
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child – 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).
☐ Other Specify applicable paragraph of 11 U.S.C. § 507(a)( ____ ).
*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

THIS SPACE IS FOR COURT USE ONLY

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date 8/16/2010 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): Cindy Fry, Account Associate |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (04/10)



| UNITED STATES BANKRUPTCY COURT | Eastern District of Missouri | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>**Patrick and Michelle O'Brien** | Case Number:<br>**10-45475-399** |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>**US Bank National Association, as Trustee for Credit Suisse HEAT 2006-1** | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br>**America's Servicing Company Attn: Bankruptcy Department**<br>**MAC X7801-014 3476 Stateview Blvd, Fort Mill, SC 29715**<br><br>Telephone number: | **Court Claim Number:** _____<br>*(If known)*<br><br>Filed on: _____ |
| Name and address where payment should be sent (if different from above):<br>**America's Servicing Company Payment Processing**<br>**MAC X2302-04C One Home Campus Des Moines, IA 50328**<br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed:  $ _____ 144,998.36 | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.** |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** __Mortgage Note__
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _8331_

   **3a. Debtor may have scheduled account as:** _____
   (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☑ Real Estate    ☐ Motor Vehicle    ☐ Other
**Describe:**

**Value of Property:** $ _____ **Annual Interest Rate** ___6.990___ %

**Amount of arrearage and other charges as of time case filed included in secured claim,**

if any: $ __6,956.04__ **Basis for perfection:** __Recorded DOT__

**Amount of Secured Claim:** $ __144,998.36__ **Amount Unsecured:** $ _____

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$ _____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:<br>**06/02/2010** | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY |
|---|---|---|

/s/ William T Holmes II, as attorney for US Bank National Association, as Trustee for Credit Suisse HEAT 20

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT    EASTERN DISTRICT OF MISSOURI ST. LOUIS DIVISION | PROOF OF CLAIM |

| Name of Debtor: Patrick E. O'brien | Case Number:10-45475-399 |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
HSBC Mortgage Services Inc.

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
HSBC Mortgage Services, Inc.
636 Grand Regency Blvd
Brandon, Florida 33510

**Court Claim Number:**_____
(*If known*)

Filed on:

Name and address where payment should be sent (if different from above):
HSBC Mortgage Services, Inc.
636 Grand Regency Blvd
Brandon, Florida 33510

Telephone Number: (716) 651-6350

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**  $33,160.22

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Money Loaned
  (See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** xxxxxx5925

  **3a. Debtor may have scheduled account as:** _____
    (See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

  **Nature of property or right of setoff:** ☒ Real Estate ☐ Motor Vehicle ☐ Other: _____
  **Describe:** 1248 Green Falls Drive, Fenton, Missouri 63026

  **Value of Property:** not available      **Annual Interest Rate:**

  Amount of arrearage and other charges as of time case filed included in secured claim,

  if any: $1,855.20 **Basis for perfection:** Recordation of Lien

  **Amount of Secured Claim:** $33,160.22  **Amount Unsecured** $0.00

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other   Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

  **Amount entitled to priority:**
  $_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

| Date:
June 10, 2010 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
/s/ Lawrence J. Buckley  as Creditor's Authorized Agent
972.643.6600 | FOR COURT USE ONLY |
| | P.O. Box 829009
Dallas, TX 75382-9009 | |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
7675-N-6055

# Missouri Secretary of State, Robin Carnahan

SOS Home :: Business Services :: Business Entity Search

Search
- By Business Name
- By Charter Number
- By Registered Agent
- For New Corporations
   Verify
- Verify Certification
   Registration Report
- File Online
   File Fictitious Name
   Registration
- File Online
- Renew Online
   File LLC Registration
- File Online
   Online Orders
- Register for Online
   Orders
- Order Good Standing
- Order Certified Documents

## Filed Documents

**Date:** 10/7/2010

(Click above to view filed documents that are available.)

### File Report Online, click here.

### For a blank Registration Report, click here.

## Business Name History

| Name | Name Type |
|------|-----------|
| HSBC MORTGAGE SERVICES INC. | Legal |
| HOUSEHOLD FINANCIAL SERVICES, INC. | Prev Legal |

## General Business - Foreign - Information

| | |
|---|---|
| **Charter Number:** | F00528574 |
| **Status:** | Good Standing |
| **Entity Creation Date:** | 6/20/2003 |
| **State of Business.:** | DE |
| **Expiration Date:** | Perpetual |
| **Last Registration Report Filed Date:** | 11/2/2009 8:00:00 AM |
| **Last Registration Report Filed:** | 2009 |
| **Registration Report Month:** | July |

## Registered Agent

| | |
|---|---|
| **Agent Name:** | C T CORPORATION SYSTEM |
| **Office Address:** | 120 SOUTH CENTRAL AVE. CLAYTON MO 63015 |
| **Mailing Address:** | |

600 West Main Street
Jefferson City, MO 65101